UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CATHY DARLENE RIDGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-CV-289-JRG-HBG |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Judge of Plaintiff's Motion for Summary Judgment [Doc. 27] and the Commissioner's Motion for Summary Judgment [Doc. 31].

Cathy Darlene Ridge ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow, the Court will **RECOMMEND** that Plaintiff's motion for **Summary Judgment** [**Doc. 27**] be **DENIED**, and the Commissioner's motion for **Summary Judgment** [**Doc. 31**] be **GRANTED**.

I. **PROCEDURAL HISTORY**

On June 12, 2018, Plaintiff protectively filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381–1385, claiming

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

a period of disability that began on **January 1, 2015**. [Tr. 179–84]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 119]. A hearing was held on January 3, 2020. [Tr. 27–55]. On January 17, 2020, the ALJ found that Plaintiff was not disabled. [Tr. 9–23]. The Appeals Council denied Plaintiff's request for review on August 12, 2020 [Tr. 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on October 9, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.  ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since June 12, 2018, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following "severe" impairments: lumbar degenerative disc disease; bipolar disorder; and anxiety with panic attacks (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 406.967(c) except she is limited to simple and detailed job tasks (SVP 1-4), and she is limited to occasional interaction with the public.
>
> 5. The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on August 2, 1958 and was 59 years old, which is defined as an individual of advanced age, on the date the

2

application was filed. The claimant subsequently changed age category to closely approaching retirement age (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 12, 2018, the date the application was filed (20 CFR 416.920(g)).

[Tr. 14–23].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different

conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

4

than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1). The claimant bears the burden of proof at the

5

first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff raises two arguments on appeal. First, Plaintiff alleges that the ALJ failed to properly evaluate the consultative medical opinion of Stephen K. Goewey, M.D. ("Dr. Goewey"). Plaintiff argues that Dr. Goewey's opinion was well-supported by his examination findings and consistent with the record. Plaintiff claims that the ALJ failed to adhere to the relevant SSA rules and regulations for evaluating consultative medical opinions like Dr. Goewey's, and that this failure prejudiced Plaintiff—warranting a remand of the final decision of the Commissioner. Second, Plaintiff alleges that the ALJ's mental RFC finding was erroneous because the ALJ impermissibly "played doctor" in determining Plaintiff's mental limitations. Specifically, Plaintiff argues that the ALJ evaluated her mental impairments without using any medical interpretations and instead based Plaintiff's mental RFC on an "independent review of raw medical data." Thus, Plaintiff requests for this Court to enter an order vacating the final decision of the Commissioner and remanding the matter for further administrative proceedings, including but not limited to *a de novo* hearing and a new decision.

The Commissioner maintains that the ALJ properly evaluated Dr. Goewey's consultative opinion and that his finding it to be unpersuasive is supported by substantial evidence. As to the ALJ's finding regarding Plaintiff's mental RFC, the Commissioner argues that the ALJ appropriately considered the record as a whole while formulating Plaintiff's mental RFC and that the ALJ was not required to base his mental RFC finding on a medical opinion. Thus, the

6

Commissioner requests for this Court to affirm her final decision, as it is supported by substantial evidence. The Court will address the arguments in turn.

### A. The ALJ's Evaluation of Dr. Goewey's Consultative Medical Opinion

Plaintiff argues first that "the ALJ failed to properly evaluate Dr. Goewey's opinion, as it was well-supported by his examination findings and consistent with the record as a whole." [Doc. 28 at 12]. Specifically, Plaintiff says "Dr. Goewey determined Plaintiff would be able to sit between three and four hours daily; stand and walk at least two hours daily; [lift] and carry at least 20 to 30 pounds occasionally . . . . Plaintiff had limited overhead activity on a non-permanent basis and decreased hearing on the left ear." [*Id.* (citing [Tr. 402])].

As a threshold matter, because Plaintiff's claim was filed after March 27, 2017, the SSA's new regulations for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new revised regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and

7

evidentiary requirements. 20 C.F.R. §§ 404.1520(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520(c)(b)(2).

Lastly, the revised regulations have set forth new articulation requirements for the ALJs in their consideration of medical opinions, stating:

> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;
>
> **(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;
>
> **(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3) (emphasis added); *see, e.g.*, *Kilgore v. Saul*, No. 1:19-CV-168-DCP, 2021 WL 932019, at *11 (E.D. Tenn. Mar. 11, 2021).

8

Plaintiff asserts that Dr. Goewey's opinion is supported by his own examination findings. Plaintiff cities to Dr. Goewey's determination that Plaintiff's Romberg test was positive, his finding that Plaintiff had a right antalgic gait, his noting that Plaintiff's mobilization was slow, and the fact that Dr. Goewey had the opportunity to personally examine Plaintiff and evaluate her physical impairments. [*Id.*]. Plaintiff argues that Dr. Goewey's assessment and plan of treatment was fair and appropriate, as evidenced by his examination of Plaintiff. Therefore, Plaintiff claims that the ALJ's decision—wherein he determined that the severity of Plaintiff's physical impairments as opined by Dr. Goewey were unsupported by his examination findings or by the record as a whole—is unsupported by substantial evidence.

Additionally, Plaintiff argues that Dr. Goewey's opinion is consistent with other evidence in the record. Specifically, Plaintiff points to the 2017 findings of Tiffany Barnett, FNP ("FNP Barnett"). Plaintiff states that FNP Barnett indicated that Plaintiff's arthralgia was uncontrolled and minimally relieved by Meloxicam, that Plaintiff's arthralgia was described as "chronic," that Plaintiff was positive for back and joint pain, and that Plaintiff experienced nocturnal pain and cervicalgia. [*Id.* at 13 (citing [Tr. 371, 361, 376, 359, 374, 365])]. Plaintiff states that in 2018, FNP Barnett noted that Plaintiff's arthralgia was getting worse, with the pain being located in the bilateral spine and radiating to the bilateral upper extremities and that Plaintiff described the pain "as aching, sharp, and throbbing." [*Id.* (citing [Tr. 347])]. FNP Barnett diagnosed Plaintiff with pain in her bilateral shoulders and dorsalgia of multiple sites in the spine and found that Plaintiff had chronic generalized arthralgia minimally relieved by daily use of Meloxicam. [*Id.* (citing [Tr. 352, 391])]. Additionally, Plaintiff was positive for thoracic pain and radicular pain, had thoracic radiculopathy, had been taking Gabapentin with minimal relief of symptoms, and experienced numbness and burning from the mid-spine that radiated to the left arm, left chest, and left neck,

9

with symptoms being aggravated by lying down and sleeping. [*Id.* at 13–14 (citing [Tr. 337, 327, 335])]. In her brief, Plaintiff refers to various other reports and finding of her pain, the effectiveness of her medications, and the findings of FNP Barnett. *See* [*Id.* at 14].

Plaintiff also references her hearing testimony. Plaintiff testified that her neck, shoulders, back, right hip, knees, and hand were affected by osteoarthritis. [Tr. 38]. Plaintiff claimed it was difficult to carry and lift things, and when she sweeps the floor or does the dishes, her back "kills her." [Tr. 39]. Plaintiff testified that she could walk for fifteen (15) minutes at a time and stand for ten (10) minutes before feeling pain. [Tr. 41–42]. Plaintiff stated that she took Gabapentin because of her nightly hip pain and that her hip pain also prevented her from sleeping. [Tr. 40]. Plaintiff testified that she drove sometimes, but she would experience sharp pain throughout her hip whenever she pushed on the brake pedal. [Tr. 48]. Plaintiff argues that the record—including her hearing testimony—supported her alleged physical impairments, meaning that Dr. Gowey's opinion was consistent with and supported by the record of evidence.

Plaintiff argues further that the ALJ mischaracterized the evidence to support his determination. Plaintiff states that the ALJ claimed she continued working as a painter, which required her to climb ladders, lift paint cans, and reach overhead to paint, which the ALJ found to be inconsistent with Dr. Goewey's opined limitations. [Doc. 28 at 15 (citing [Tr. 20])]. By contrast, Plaintiff argues that she testified her hours were reduced because of her impairments, that she had not been using ladders anymore—only a step-up ladder on rare occasions—, that she was doing simple work like taping and masking, and that she was incapable of lifting paint cans anymore due to her physical impairments. [*Id.* (citing [Tr. 35, 36, 44, 43])]. Plaintiff asserts that the ALJ thus misconstrued the record by saying that Plaintiff could do activities that she was incapable of performing, and that this alleged mischaracterization of the evidence is impermissible.

10

Plaintiff maintains that the ALJ's flawed evaluation of Dr. Goewey's consultative medical opinion prejudiced her because—had the ALJ appropriately evaluated Dr. Goewey's opinion—she would have been found to be more physically disabled than what was determined by the ALJ. Plaintiff states that this alleged error warrants a remand of the Commissioner's final decision.

The Court summarizes the ALJ's evaluation of Dr. Goewey's consultative medical opinion as follows. The ALJ found that Dr. Goewey's opinion was "unpersuasive." [Tr. 20]. The ALJ noted that Dr. Goewey "conducted a one-time physical examination, and the limitations he assessed are not consistent with his own examination findings or the treatment record as a whole." [*Id.*]. The ALJ acknowledged that Dr. Goewey indicated Plaintiff had an antalgic gate; however, the ALJ still concluded that "the examination findings as a whole do not support a reduction in standing and walking to two hours in an eight-hour day or a limitations [*sic*] to sitting three to four hours in an eight-hour workday." [*Id.*]. Furthermore, the ALJ found that there was no support for the alleged radiculopathy, as evidenced by Dr. Goewey's examination of Plaintiff's lower extremities being "normal." [*Id.*]. The ALJ also found that neither Dr. Goewey's examination nor the record as a whole supported a medically determinable shoulder impairment despite Dr. Goewey assessing Plaintiff as having a "nonpermanent" limitation of her overhead reaching. [*Id.*]. The ALJ stated that this limitation—as well as Dr. Goewey's examination as a whole—"appears to be based primarily on the [Plaintiff's] subjective pain reports." [*Id.*]. The ALJ also considered that Plaintiff was noted by Dr. Goewey as putting forth only "fair" effort during the examination. [*Id.*]. Additionally, the ALJ found that the record as a whole did not support Dr. Goewey's assessment of Plaintiff having osteoarthritis of the hips. [*Id.*]. Lastly, the ALJ also considered that Plaintiff "reported throughout the relevant period, that she continued to work as a painter, which required her to climb ladders, lift paint cans, and reach overhead to paint" which he found to be

11

inconsistent with the limitations Dr. Goewey opined to. [*Id.* (citing [Tr. 399–403])].

The Court finds that the ALJ's evaluation of Dr. Goewey's consultative medical opinion was appropriate in this case, and the evaluation was done in accordance with the relevant SSA rules and regulations. Most importantly, the ALJ adequately considered the supportability and consistency of Dr. Goewey's opinion. Additionally, the ALJ considered other factors in his evaluation, despite the rules expressly stating that ALJs need not discuss every factor.

Specifically, the ALJ considered Plaintiff's work as a painter during the relevant period as well as her reported activities. *See* 20 C.F.R. § 416.971 ("The work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level . . . . Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). The ALJ considered that Plaintiff reported her work as a painter required her to climb ladders, lift paint cans, and reach overhead to paint. [Tr. 20]. The ALJ found that these work activities were inconsistent with the limitations imposed by Dr. Goewey and alleged by Plaintiff. As the Commissioner argues, Plaintiff testified at the January 2020 hearing that she usually worked inside taping for paint jobs or retrieved items for other workers. Plaintiff testified that she no longer lifted paint cans; however, Plaintiff also wrote in a work history report dated July 23, 2018 that the heaviest weight she lifted while working as a painter was a "can of paint." [Tr. 248]. Furthermore, on August 13, 2019, Gregory Perry, MD, noted Plaintiff reported to him that she was "employed as a painter and . . . sometimes works on ladders . . . ." [Tr. 493]. The Court notes that Plaintiff testified at the hearing that she would rarely use a small "step up" ladder as part of her job. [Tr. 36].

In assessing the opinions of the State Agency psychological consultants, the ALJ expressly

considered Plaintiff's reported daily activities as well. [Tr. 20 ("[Plaintiff] reported that she enjoys spending time going to the lake and talking with friends.")]. Additionally, Plaintiff testified at the hearing that she would get her three grandsons off to school, get things for breakfast together and pick things up around the house. [Tr. 46]. Plaintiff also testified that she does a load of laundry every day and prepares supper. Plaintiff also reported being able to drive, even though she stated that stepping on the brake would cause her to experience hip pain. [Tr. 47–48]. The Court notes that the ALJ discussed these activities as part of his analysis of the State Agency consultants' opinions, but it is still helpful, as it evidences that the ALJ considered Plaintiff's reported daily activities in addition to her reported work as a painter. *See* 20 C.F.R. § 416.929(c)(3)(i) (ALJs will consider daily activities when evaluating the intensity and persistence of symptoms and the extent to which they limit work ability).

The ALJ also considered Dr. Goewey's examining relationship with Plaintiff in that he "conducted a one-time physical examination . . . ." [Tr. 20]; *see* 20 C.F.R. 416.920(c)(3)(v) (ALJ's will consider the examining relationship. "A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder."). Plaintiff disagrees with the ALJ's consideration of this one-time examination and the effect it has on the persuasiveness of Dr. Goewey's opinion. Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995,

13

at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

The ALJ found that the severe limitations assessed by Dr. Goewey were not supported by or consistent with his examination findings and with the record of evidence. The Court finds that substantial evidence supports that determination. This is evidenced by, among other things, the ALJ's consideration of Plaintiff's past work activities, her reported daily activities, and the treatment relationship between Plaintiff and Dr. Goewey. As to supportability, the ALJ found that the examination findings as a whole did not support the severity of limitations as opined by Dr. Goewey. As an example, the ALJ found that there was no support for the alleged radiculopathy, "as Dr. Goewey's examination of the claimant's lower extremities was normal." [Tr. 20]. The ALJ also noted that Plaintiff only put forth "fair effort" during her examination, which also hindered the supportability of Dr. Goewey's opinion. Similarly, the ALJ found that Dr. Goewey's opinion was inconsistent with the record as a whole—including Plaintiff's reported activities and normal findings on physical exams. *See* [Tr. 20 ("[T]he limitations [Dr. Goewey] assessed are not consistent with his own examination findings or the treatment record as a whole.") ("[Plaintiff's] ongoing work activity is inconsistent with the limitations Dr. Goewey assessed.")].

Ultimately, the Court finds that the ALJ considered a great number of factors in finding Dr. Goewey's opinion to be unpersuasive, but most importantly he considered supportability and consistency. Furthermore, substantial evidence exists in the record to support the ALJ's evaluation of Dr. Goewey's consultative medical opinion. As such, this alleged error does not warrant a remand of the Commissioner's final decision.

14

B.   The ALJ's Evaluation of Plaintiff's Mental RFC

Plaintiff also contends that the ALJ's evaluation of Plaintiff's mental RFC is unsupported by substantial evidence because the ALJ allegedly "applied impermissible tactics of 'playing doctor' in determining Plaintiff's mental limitations." [Doc. 28 at 16]. Specifically, Plaintiff asserts that "the ALJ relied on no medical interpretation of Plaintiff's mental impairments in determining her functional capacity[,]" and he "interpreted Plaintiff's mental impairments into functional limitations without any supporting opinion in the record." [*Id.*]. Plaintiff argues that her mental limitations were too complex to be interpreted by the ALJ without professional medical interpretation, meaning the ALJ's mental RFC determination is unsupported by substantial evidence. The Commissioner maintains that the ALJ's consideration of Plaintiff's mental limitations was appropriate and that the ALJ's decision need not be based solely on a physician's opinion.

Ultimately, the Court agrees with the Commissioner and finds that the ALJ's consideration of the medical and non-medical evidence as is relates to Plaintiff's mental impairments was appropriate, and the final determination of Plaintiff's mental RFC is supported by substantial evidence. It is well-established that, when evaluating the claimant's RFC, the ALJ is not required to base his RFC findings entirely on a physician's opinion. *See, e.g.*, *Mokbel-Alijahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401–02 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.") (citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442–43 (6th Cir. 2017) (rejecting the argument that "the ALJ's [residual functional capacity] lacks substantial evidence because no physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th

15

Cir. 2013) (rejecting the same argument because "the ALJ is charged with the responsibility of determining the [residual functional capacity] based on her evaluation of the medical and non-medical evidence")).

An ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "The Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined [the] RFC based on objective medical evidence and non-medical evidence." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (internal citations omitted). "Rather, it is the Commissioner's prerogative to determine whether a certain symptom or combination of symptoms renders a claimant unable to work." *Luukkonen v. Comm'r Soc. Sec.*, 653 F. App'x 393, 402 (6th Cir. 2016) (citing 20 C.F.R. § 416.929(c)(1), -(d)(2)). The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ).

The ALJ found that Plaintiff had the "severe" impairments of bipolar disorder and anxiety with panic attacks and that those mental impairments in combination with her physical impairments "significantly limit the ability to perform basic work activities." [Tr. 14]. Despite finding "that the [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[,]" the ALJ found that "the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." [Tr. 19].

In making this determination, the ALJ considered the "sporadic treatment" Plaintiff

16

received from a mental health professional as well as Plaintiff's noncompliance with medications throughout the record. [*Id.*]. This was despite the record indicating that her mental impairments were "well controlled without medications prior to early 2019, when the [Plaintiff] reported worsening due to deaths of loved ones." [*Id.*]. "After that time, [Plaintiff] remained noncompliant with medication, yet in July 2019, despite her noncompliance with medication, [Plaintiff] reported some improvement in her mood." [Tr. 19–20]. The ALJ also considered that Plaintiff reported on August 8, 2019 that she had not taken any mental health medications in over a year. [Tr. 20]. Furthermore, Plaintiff continued to work as a painter and "[d]espite taking no mental health medications" she "was fully oriented; her speech was appropriate; her memory was intact; her attitude was cooperative; her judgment and insight were fair; thought processes were logical; thought content was unremarkable; and she expressed no homicidal or suicidal ideation." [*Id.*]. Plaintiff was noted to be depressed; however, when prescribed mental health medications, "she indicated that she wanted something non-sedating, as she did not want it to interfere with her job." [*Id.* (citing [Tr. 484–99])]. The evidence discussed above led to the ALJ finding that Plaintiff "is limited to simple and detailed job tasks . . . and she is limited to occasional interaction with the public due to bipolar disorder and anxiety with panic attacks." [*Id.*].

The ALJ also considered the opinions of the State Agency psychological consultants but found them to be unpersuasive. [*Id.*]. The State Agency consultants opined that Plaintiff's mental impairments were nonsevere; however, the ALJ found that it was "reasonable that the [Plaintiff] would have some limitations related to bipolar disorder and anxiety with panic attacks." [*Id.*]. This led to the ALJ incorporating certain limitations into Plaintiff's mental RFC, including that she was limited to occasional interaction with the public, and that she had some limitations in her concentration, persistence, and pace such that she would be limited to the performance of simple

17

and detailed tasks. [Tr. 20–21]. It is clear that the ALJ found the State Agency consultants' opinions to be unpersuasive at least in part because her mental impairments were *more* severe than what they determined; thus, the ALJ incorporated additional limitations into the final mental RFC finding.

Additionally, the ALJ found that "[t]he severity of [Plaintiff's] mental impairments, considered singly and in combination, do no meet or medically equal the criteria of listings 12.04 and 12.06." [Tr. 16]. As part of that finding, the ALJ considered wither the "paragraph B" criteria were satisfied, which requires that the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. [*Id.*].

The ALJ found that Plaintiff had a "mild limitation" in "understanding, remembering or applying information[.]" [*Id.*]. For this finding, the ALJ relied on the treatment record, which indicated "that the [Plaintiff] has obtained intermittent treatment for allegations of anxiety and depression; however, she has been noncompliant with mental health medications throughout the record." [*Id.*]. Furthermore and "[d]espite her noncompliance, in August 2019, the treatment records indicated that the [Plaintiff] was fully oriented; her speech was appropriate; her memory was intact; her attitude was cooperative; her judgment and insight were fair; thought processes were logical; thought content was unremarkable; and she expressed no homicidal or suicidal ideation." [*Id.* (citing [Tr. 484–99])]. The ALJ also expressly considered that Plaintiff worked as a painter during the relevant period—even if the work did not rise to the substantial gainful activity level. [*Id.*]. The Plaintiff also testified that her painting job required her to supervise other employees. [*Id.*]. The ALJ also noted from Plaintiff's hearing testimony that she was "able to describe past work activity and answer questions or provide explanations. Further, the medical record of evidence indicates that [Plaintiff] was able to recall her medical history, social history,

and relay information to her doctors and other examiners without difficulty." In considering the evidence above, the ALJ found "no more than [a] mild limitation in this area of functioning."

The ALJ found that Plaintiff had a "moderate limitation" in interacting with others. [Tr. 17]. The ALJ considered Plaintiff reporting regular interaction with others at work, including supervising others. [*Id.*]. Additionally, the ALJ noted that Plaintiff was able to sustain conversation at the hearing, appeared to be able to understand and respond to social cues, including physical, verbal, and emotional cues. [*Id.*]. Plaintiff also indicated in her function report that she spent time sitting around and talking to others, and she reported in June 2019 that she enjoyed going to the lake and spending time with friends. [*Id.*]. Lastly, the ALJ considered that Plaintiff indicated she had no difficulty interacting with others even if she preferred to be alone. [*Id.* (citing [Tr. 234–43, 484–99])].

"With regard to concentrating, persisting or maintaining pace," the ALJ found Plaintiff has a moderate limitation. [*Id.*]. The ALJ noted that Plaintiff "reported difficulty following instructions and maintaining attention; however . . . she continued to work and supervise others." [*Id.*]. Furthermore, "treatment records [indicated] that [Plaintiff's] memory was intact; her attitude was cooperative; her judgment and insight were fair; thought processes were logical; and thought content was unremarkable. Additionally . . . treatment records document no sustained period where [Plaintiff] was compliant with mental health medications." [*Id.*].

Lastly, the ALJ found that Plaintiff had a "mild limitation" in her ability to adapt or manage herself. [*Id.*]. Again, the ALJ noted Plaintiff's work as a painter and supervisory duties. As well, the ALJ stated that "the record of evidence did not reflect significant limitations in her ability to make plans independently of others, maintain personal hygiene and attire appropriate to a work setting, or remain aware of normal hazards and take appropriate precautions." [*Id.*]. Plaintiff also

19

reported "that she could prepare simple meals; she could perform some household chores; she could handle her finances; and she could drive a car. [*Id.* (internal citations omitted)].

As discussed above, the ALJ's evaluation of Plaintiff's mental RFC was clearly supported by substantial evidence. The ALJ expressly considered Plaintiff's conservative and sporadic mental health treatment, noncompliance with medications, an improvement of Plaintiff's symptoms while on medication, mental health examinations, Plaintiff's work as a painter as well as her supervisory duties among other things. The Court finds that the ALJ's analysis was appropriate under the circumstances. Thus, the Court finds that Plaintiff's second argument is also without merit and does not constitute a basis for a remand of this matter.

## VI. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[2] Plaintiff's **Motion for Summary Judgment** [**Doc. 27**] be **DENIED**, and the Commissioner's **Motion for Summary Judgment** [**Doc. 31**] be **GRANTED**.

Respectfully Submitted,

*Bruce Guyton*
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).